25CA1813 Marriage of Skellchock 06-11-2026

COLORADO COURT OF APPEALS

Court of Appeals No. 25CA1813
Larimer County District Court No. 18DR30326
Honorable Gregory M. Lammons, Judge

In re the Marriage of

Derek Skellchock,

Appellant,

and

Alora Ann Paige Volz,

Appellee.

ORDER AFFIRMED

Division VI
Opinion by JUDGE GROVE
Gomez and Moultrie, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced June 11, 2026

Derek Skellchock, Pro Se

No Appearance for Appellee

¶ 1    Derek Skellchock (father) appeals the district court's order adopting a magistrate's ruling concerning an emergency motion to restrict parenting time.[1]  We affirm.

## I.    Background

¶ 2    The district court dissolved father's marriage with Alora-Ann Paige Volz (mother), and it allocated mother primary parenting time with their child.

¶ 3    Mother later filed an emergency motion to restrict father's parenting time.  She alleged that (1) on July 8, 2025, father engaged in a physical act of domestic violence against his ex-girlfriend during his parenting time; (2) father was arrested and criminally charged as a result of that incident; and (3) the Larimer County Department of Human Services (the Department) created a safety plan recommending the child have no contact with father.  The magistrate temporarily restricted father's parenting time.

---

[1] Father's opening brief includes citations to cases that do not appear to exist and that bear the hallmarks of hallucinations by a large language model.  "The submission of a brief containing . . . [such] hallucinations runs afoul" of the appellate rules.  *Al-Hamim v. Star Hearthstone, LLC*, 2024 COA 128, ¶ 35; *see* C.A.R. 28(a)(7)(B).  We decline to sanction father at this time.  However, we warn him that further noncompliance may result in sanctions, including dismissal of an appeal.  *See Al-Hamim*, ¶ 36.

¶ 4     Then, after an evidentiary hearing, the magistrate found that an incident of domestic violence had occurred on July 8, 2025, and that "[f]ather has demonstrated a pattern of domestic violence." However, the magistrate found that father had sufficiently mitigated the magistrate's safety concerns for the child, observing that father had moved away from his ex-girlfriend and had no further contact with her. As a result, the magistrate denied mother's motion and declined to continue father's parenting time restriction.

¶ 5     Father petitioned the district court for review. He argued that the magistrate's order was void because pending appeals in this court divested the magistrate of jurisdiction to rule on mother's motion. He also argued that the magistrate improperly admitted certain evidence at the hearing and erred by finding that he engaged in an act of domestic violence. The district court adopted the magistrate's ruling.

## II.     Preliminary Matter

¶ 6     Father seeks appellate review of the district court's order that adopted the magistrate's denial of mother's motion to restrict his parenting time. That ruling was ultimately in father's favor, and we generally will not render a decision on an issue when it will have no

2

practical legal effect upon an existing controversy. *See In re Marriage of Salby*, 126 P.3d 291, 301 (Colo. App. 2005) ("An appellate court will not render an opinion on the merits of an appeal when the issues presented become moot . . . ."); *cf. Colo. Mountain Props., Inc. v. Heineman*, 860 P.2d 1388, 1391 (Colo. App. 1993) ("Generally, one who accepts the benefits of a judgment may not seek reversal of that judgment on appeal.").

¶ 7 However, we may still review an issue that has been rendered moot when the ruling has significant collateral consequences for a party. *See People in Interest of C.G.*, 2015 COA 106, ¶ 13; *see also DePriest v. People*, 2021 CO 40, ¶ 9 ("Under the collateral consequences exception to the mootness doctrine, a case is moot 'only if it is shown that there is no possibility that any collateral legal consequences will be imposed on the basis of the challenged conviction.'" (citation omitted)).

¶ 8 Father asserts that the magistrate's domestic violence finding "carries ongoing collateral consequences" and that it must be vacated. While father does not provide much explanation of the purported ongoing collateral consequences, we will assume without

deciding that, under the circumstances, appellate review is warranted. Thus, we consider his contentions.

### III.    Standard of Review

¶ 9      Our review of a district court's order adopting a magistrate's decision is effectively a second layer of appellate review. *In re Parental Responsibilities Concerning S.Z.S.*, 2022 COA 105, ¶ 11. We accept the magistrate's factual findings unless they are clearly erroneous. *Id.* We review de novo the magistrate and the district court's application and conclusions of law. *Id.*

### IV.    The Court's Jurisdiction

¶ 10     Father contends that the magistrate and the district court's orders must be vacated as void for lack of jurisdiction. He explains that when mother filed her motion, multiple appeals pending with this court divested the magistrate and the district court of jurisdiction. *See In re Marriage of Skellchock*, (Colo. App. No. 25CA0224, Jan. 15, 2026) (not published pursuant to C.A.R. 35(e)); *In re Marriage of Skellchock*, (Colo. App. No. 24CA1282, Oct. 23, 2025) (not published pursuant to C.A.R. 35(e)); *In re Marriage of Skellchock*, (Colo. App. No. 23CA1178, July 17, 2025) (not published pursuant to C.A.R. 35(e)). He also highlights that, in a

July 9, 2025, order (which was unrelated to the parenting time orders relevant in this appeal), the district court said that it did "not have jurisdiction to take any action" while father's appeals were pending in the appellate court.  Father is mistaken.

¶ 11     When an appeal is perfected, jurisdiction is transferred to the appellate court, and the district court generally lacks jurisdiction over matters material to the issues on appeal.  *Black v. Black*, 2020 COA 64M, ¶ 89.  However, when a statute explicitly grants the district court jurisdiction over an issue during the pendency of an appeal, the court retains authority to rule on that matter.  *Id.*

¶ 12     Under section 14-10-129(1)(a)(I), C.R.S. 2025, the legislature explicitly grants the district court "continuing jurisdiction to make or modify an order granting or denying parenting time rights . . . during the pendency of an appeal."  Thus, even though father's pending appeals in part concerned previous orders related to parenting time, the magistrate and the district court were vested with continuing jurisdiction to resolve mother's motion to restrict father's parenting time.  *See id.*; *Black*, ¶ 89.

## V. Mother's Untimely Witness Disclosure

¶ 13 Father next contends that the magistrate erred by admitting testimony from a Department caseworker who mother failed to disclose as a witness before the hearing. We are unpersuaded.

¶ 14 In a domestic relations case, each party is obligated to provide a list of the witnesses they intend to call at a contested hearing. C.R.C.P. 16.2(e)(3); *In re Parental Responsibilities Concerning M.E.R-L.*, 2020 COA 173, ¶ 7. The court may impose sanctions if a party does not comply with this obligation. C.R.C.P. 16.2(e)(5), (j). However, the court has considerable discretion when determining whether to impose sanctions, and we will not disturb the court's decision absent a showing that it acted in a manifestly arbitrary, unreasonable, or unfair manner, or it misapplied the law. *See M.E.R-L.*, ¶ 6.

¶ 15 The magistrate directed the parties to provide witness lists at least twenty-four hours before the hearing on mother's motion to restrict parenting time. *See* C.R.C.P. 16.2(e)(3) ("The time for the disclosure of expert or lay witnesses whom a party intends to call at [an] . . . emergency hearing shall be determined by the court."). At the start of the hearing, mother acknowledged that she had not

6

complied with this disclosure obligation but intended to call a Department caseworker (Kapperman) as a witness. In response to father's objection, mother explained that father identified a different Department caseworker (Posey) on his witness list; Posey was not available to testify; and Kapperman, who was also working with the family, was filling in to testify for Posey.

¶ 16 The magistrate determined that although mother had not previously disclosed Kapperman, mother could call her as a lay witness because father was not prejudiced by mother's late disclosure. (The magistrate, however, denied mother's request to certify Kapperman as an expert.) The magistrate explained that, in father's response to mother's motion, he referenced the Department's domestic violence investigation and its safety plan, and she found that father was aware that mother intended to call a Department caseworker as a witness.

¶ 17 Kapperman then testified that she had been involved with the family since April 2025, and that the Department received a referral on July 8, 2025, concerning father's "domestically violent" conduct toward his ex-girlfriend. Kapperman further described the domestic

violence incident and the Department's safety concerns when the child was in father's care.

¶ 18     Father contends that the magistrate should have excluded Kapperman's testimony as a sanction for mother's late witness disclosure.  However, it was within the magistrate's sole discretion to determine whether a sanction was warranted under the circumstances, and the magistrate was under no obligation to sanction mother.  *See* C.R.C.P. 16.2(e)(5), (j); *M.E.R-L.*, ¶ 6; *In re Marriage of Davis*, 252 P.3d 530, 537 (Colo. App. 2011).  The magistrate exercised her discretion and determined, with record support, that Kapperman could testify because father, ultimately, was not prejudiced by mother's late disclosure.  Indeed, mother's motion and father's response reveal that father knew of the Department's investigation, the caseworkers involved, and the Department's recommendation that father's contact with his child be restricted.  And father has not shown that the magistrate's decision was manifestly arbitrary, unreasonable, or unfair, or a misapplication of the law.  *See M.E.R-L.*, ¶ 6.

¶ 19     Father also suggests that the magistrate violated his right to due process by allowing Kapperman's testimony.  Due process

requires that a party be provided with a meaningful opportunity to be heard and to respond to opposing evidence. *See In re Marriage of Hatton,* 160 P.3d 326, 329 (Colo. App. 2007); *see also Van Sickle v. Boyes,* 797 P.2d 1267, 1273 (Colo. 1990) (noting that due process is flexible and that the essence of due process is fundamental fairness). Father was given that opportunity. He knew of the Department's involvement and the topics on which Kapperman would testify. He also cross-examined Kapperman, and he presented his own evidence.

¶ 20 The district court therefore did not err by declining to disturb the magistrate's discretionary ruling allowing Kapperman to testify.

## VI. The Child's Statements

¶ 21 At the hearing, mother testified about the child's observations during the July 8, 2025, domestic violence incident. Father contends that the child's statements to mother were inadmissible hearsay. We disagree.

¶ 22 Hearsay is a statement, other than one made by the declarant while testifying at the hearing, offered in evidence to prove the truth of the matter asserted. CRE 801(c). Absent an exception, hearsay is inadmissible. CRE 802. An excited utterance is one such

exception. CRE 803(2). It is defined as "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." *Id.* While the statement must be a spontaneous reaction, "there is no bright line rule regarding the passage of time between the startling event and the excited utterance," and the exception can extend to statements made in response to questioning. *People v. Abdulla,* 2020 COA 109M, ¶ 72.

¶ 23  The district court "is in the best position to consider the effect of a startling event on a declarant, and it is afforded wide discretion in determining admissibility under the excited utterance hearsay exception." *Id.* at ¶ 65. We therefore will not disturb the court's evidentiary ruling unless it is shown to be an abuse of discretion. *See Bernache v. Brown,* 2020 COA 106, ¶ 19.

¶ 24  Mother testified that, on the date of the incident, father told her that the child was with the police at his home. Mother said that she "rushed" to his home and that, when she arrived, she learned "a violent domestic violence" incident had occurred. She testified that she found the child "crying" and that the child "automatically went to blaming himself." Mother said that the child then described

10

seeing "blood all over the house and all over" father's ex-girlfriend, hearing yelling between father and his ex-girlfriend, seeing "fighting," and noticing that father's ex-girlfriend was severely injured.

¶ 25    The magistrate found that the child's statements were admissible under the excited utterance exception, and the record supports that finding. *See* CRE 803(2); *see Abdulla*, ¶¶ 65, 72. As mother described, the child experienced a startling event and made statements to mother while he appeared to be under the stress of excitement caused by the physical altercation between father and his ex-girlfriend.

¶ 26    But even if we were to assume the exception did not apply to the child's statements, any error in their admission would be harmless given that those statements were cumulative of other properly admitted testimony. *See In re Marriage of Adamson*, 626 P.2d 739, 741 (Colo. App. 1981). In particular, Kapperman testified that father and his ex-girlfriend had been arguing on July 8, 2025, father "became violent with his [ex-]girlfriend," and he "caus[ed] her to have large bruises on her left leg, her left arm and a significant cut on her neck that caused her to bleed." Mother also testified

that she saw father's ex-girlfriend's injuries after the incident and that their "house [was] full of blood."

¶ 27    The magistrate therefore acted within her discretion by admitting the child's statements, and the district court did not reversibly err by upholding her decision.

## VII.   The Finding of Domestic Violence

¶ 28    Father contends that the district court erred by adopting the magistrate's finding that he engaged in an act of domestic violence. He argues that the magistrate's finding relied on inadmissible evidence and that "[n]o firsthand testimony supports the domestic violence allegation."  But, as discussed above, we reject father's contentions that the magistrate improperly admitted Kapperman's testimony and the child's statements describing the incident.  And that evidence, along with testimony from mother, supports the magistrate's finding that father engaged in an act of domestic violence.  *See S.Z.S.*, ¶ 11 (recognizing that the magistrate's factual finding must be accepted on appellate review when it has record support).  Kapperman's testimony, the child's statements, and mother's testimony described a physical assault between father and his ex-girlfriend, and the magistrate credited that evidence.

¶ 29 Even so, father suggests that other evidence admitted at the hearing contradicted the magistrate's finding. However, the magistrate resolved the conflicting evidence, and we may not set aside her finding when, as here, the record supports it. *See In re Marriage of Evans*, 2021 COA 141, ¶ 45; *see also In re Marriage of Thorburn*, 2022 COA 80, ¶ 49 (recognizing that credibility determinations and the weight, probative force, and sufficiency of the evidence, as well as the inferences and conclusions to be drawn, are matters within the court's sole discretion).

¶ 30 We therefore may not disturb the magistrate's finding that father engaged in an act of domestic violence.

## VIII. The District Court's Review

¶ 31 We last reject father's general claim that the district court failed to conduct a meaningful review of the magistrate's ruling.

¶ 32 The district court considered father's petition for review, reviewed the available record, and analyzed each of father's contentions. *See* C.R.M. 7(a)(8) (2025). The court determined that father's contentions lacked merit, and it adopted the magistrate's ruling. *See* C.R.M. 7(a)(10).

¶ 33    Still, father asserts that the court "minimiz[ed] . . . legal and constitutional errors based solely on the fact that parenting time was ultimately restored." However, we have reviewed and rejected the purported legal and constitutional errors father raises on appeal. And father does not otherwise develop his conclusory claim that the district court failed to engage in a meaningful review of the magistrate's ruling. We therefore decline to further address this issue. *See S.Z.S.,* ¶ 29 (declining to address an undeveloped contention).

## IX. Disposition

¶ 34    The order is affirmed.

JUDGE GOMEZ and JUDGE MOULTRIE concur.